**UNITED STATES of America,**
**Appellee,**

v.

**Miguel GUZMAN, also known as "Mipo", and Edwin Rivera, also known as "Deadeye", and Gregory Ayala, also known as "Greggo", Defendants–Appellants,**

---

Rolondo Lorenzo, also known as "Orlando", David Rivera, also known as "OG", Angel Santiago, also known as "Whiteboy", Rafael Lebron, also known as "Mickey", Nicholas Ortiz, William Licea, also known as "Cuban Will", Samuel James Smith, also known as "Devon", also known as "Divine", Alonzo Jarrell, also known as "Areef", also known as "Maurice", Tommy Perez, also known as "Tommy Flintstone", Kenneth S. Johnson, also known as "Aku", also known as "Akoo", Daniel Ortiz, also known as "Slim" and Carlos Hernandez, also known as "Cuz", Defendants.

United States of America, Appellant–Cross–Appellee,

v.

Gregory Ferguson, aka "Black Greggo", Defendant–Appellee–Cross–Appellant.

Nos. 99–1262(L), 99–1302, 99–1322, 99–1324(XAP), 99–1398.

United States Court of Appeals, Second Circuit.

March 23, 2001.

Theodore S. Green, Green & Willstatter, White Plains, NY, for appellant Guzman.

Jane Simkin Smith, Millbrook, NY, for appellant Rivera.

Martin G. Goldberg, New York, NY, for appellant Ayala.

Robin L. Baker, Assistant United States Attorney; Mary Jo White, United States Attorney, Southern District of New York, Mary Mulligan, Preetinder Bharara, Ira M. Feinberg, Assistant United States Attorneys, on the brief, New York, NY, for appellee.

Present JOHN M. WALKER, JR., Chief Judge, POOLER, Circuit Judge, and HADEN,* Chief District Judge.

## SUMMARY ORDER

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of said district court be and it hereby is AFFIRMED.

Defendants-appellants Miguel Guzman, Edwin Rivera, and Gregory Ayala appeal from their May 24, June 9, and July 16, 1999 judgments of conviction following a jury verdict in the Southern District of New York.

The evidence at trial showed that Guzman was the head of a Bronx gang called Power Rules that sold crack and heroin, and committed, or attempted to commit, numerous murders. Edwin Rivera was Guzman's right-hand man, and managed one of Power Rules' crack spots. Gregory Ayala was initially a member of Power Rules, and was in charge of one of Power Rules' crack and heroin spots. In late 1995, Ayala began to deal directly with Guzman's heroin supplier, Viejo, and stopped sharing the proceeds with Guzman. A gang war consequently broke out between Power Rules and Ayala's crew, known as the Avenue St. John Boys. During the war Power Rules members made repeated attempts on Ayala's life, and the Avenue St. John Boys responded in kind.

After a three-month trial in the Southern District of New York, Guzman was convicted of RICO and racketeering conspiracy, based on numerous racketeering acts including murder and attempted murder, narcotics conspiracy and extortion conspiracy, as well as various counts under 18 U.S.C. § 1959 and 18 U.S.C. § 924(c). Rivera was convicted of RICO and racketeering conspiracy, as well as various counts under section 1959 and section 924(c). Ayala was convicted of RICO and racketeering conspiracy, and conspiracies to distribute heroin and crack. The district court sentenced Guzman in principal part to life imprisonment plus 145 years, Rivera to 300 months plus 65 years, and Ayala to 151 months' imprisonment. These appeals followed.

On appeal, Guzman argues that (1) the district court erred in discharging one of the jurors for cause; (2) post-arrest statements of Rivera and Ayala were improperly redacted and admitted; (3) the murder of Alberto Garcia was not related to the

---

* The Honorable Charles H. Haden, II, Chief Judge of the United States District Court for the Southern District of West Virginia, sitting by designation.

enterprise; (4) he was denied his confrontation rights by the assertion of the privilege against self-incrimination by a cooperating witness, Italiano Andino, in response to certain questions on cross-examination; and (5) the district court abused its discretion by rejecting his *pro se* post-trial motion.

Rivera argues that (1) the evidence was insufficient to sustain his convictions regarding (a) the attempted murder of Teddy Melendez and (b) the plan to murder Viejo; (2) he was denied his confrontation rights by Andino's assertion of his privilege against self-incrimination; (3) the jury instruction on Andino's assertion of privilege was erroneous; (4) the evidence was insufficient to sustain his conviction for the assault on Andino under (a) 18 U.S.C. § 1959, and (b) 18 U.S.C. § 924(c); (5) his convictions on separate counts relating to the conspiracy to murder Ayala and the conspiracy to murder other Avenue St. John Boys violated double jeopardy; (6) his convictions under section 924(c) are invalid because (a) a conspiracy to commit a crime of violence is not a legally sufficient predicate for section 924(c) liability, and (b) the jury instruction relating to the attempt to murder Viejo was erroneous; (7) the racketeering statutes are unconstitutionally vague; and (8) there was insufficient proof of a nexus between the activities of the enterprise and interstate commerce.

Ayala argues that (1) his trial counsel was ineffective for failing to object to the redaction and admission of his post-arrest statement; (2) he was improperly tried jointly with his co-defendants; (3) the evidence was insufficient to sustain his convictions in that (a) the conspiracy to distribute crack and the conspiracy to distribute heroin were one and the same, (b) there was insufficient proof that he participated in the narcotics conspiracies with members of Power Rules, and (c) he was only associated with Power Rules for a short time; and (4) the district court improperly instructed the jury on the interstate commerce element.

■ A. Admission of redacted statements. Guzman argues that the admission of redacted post-arrest statements by Ayala and Rivera violated his rights under the Confrontation Clause because the substitution of the words "Power Rules" for his name or nickname altered the meaning of the statements and made them incriminating to him. *See Bruton v. United States,* 391 U.S. 123, 137, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). After being arrested, Ayala waived his constitutional rights and told a detective that he had known Guzman for about four or five years, and that Guzman was the leader of Power Rules. Ayala described how he used to sell crack, and that he would pick up 50 bundles four times a week "from Viejo of heroin for Mips [Miguel Guzman]." To avoid a violation of Guzman's *Bruton* rights, the district court had the statement redacted to read "from Viejo of heroin for Power Rules." Rivera's original statement had included the phrase "Guzman ordered Black Greggo [Ferguson] and Lebron to go to Avenue St. John's and shoot Greggo [Ayala] and his gang." The version admitted at trial stated that "several armed members of the gang were told by a Power Rules member to go to Avenue St. John's and shoot another guy and his gang." Guzman argues that these substitutions were damaging because they helped establish the fact that there was an enterprise called Power Rules, and made his name synonymous with the enterprise.

This court has held that "the appropriate analysis to be used when applying the *Bruton* rule requires that we view the redacted confession in isolation from the other evidence introduced at trial." *Unit-*

*ed States v. Williams,* 936 F.2d 698, 700 (2d Cir.1991). Under this rule, it is clear that neither statement incriminated Guzman personally, since "Power Rules" and "a Power Rules member" could refer to any one of a large number of people. Therefore the fact that the statements tended to establish the existence of the enterprise did not violate Guzman's *Bruton* rights. In addition, the jury was specifically instructed that the statements of Ayala and Rivera were only to be considered against each of them and not to be considered against any other defendant. Finally, even if the substitution of "Power Rules" for Guzman's name was error, it was harmless in view of the overwhelming evidence at trial establishing the existence of the enterprise, Guzman's leadership of it, and his involvement in drug trafficking and violence.

■ On the same subject, Ayala claims that his trial counsel was ineffective because he failed to object to the redaction of his post-arrest statement and did not move to have the statement suppressed. Ayala complains of the substitution of "Power Rules" for Guzman's name and the court's failure to admit his statement in its entirety, as it omitted certain portions of the statement relating to Ayala's participation in several shooting incidents. Ayala cannot show that his attorney's performance fell below an objective standard of reasonableness, since there was no plausible basis upon which to make a suppression motion. Nor can Ayala show that his counsel, who represented him vigorously at trial, was constitutionally ineffective for failing to object to the statement's redaction. First, the objection would most likely have been futile, as Guzman's objection to the substitution of "Power Rules" for his name was overruled by the district court. Second, the substitution did not change the meaning of his statement, which originally implicated Ayala in a conspiracy to distribute heroin with the heroin supplier Viejo, as well as Guzman and Felix, both of whom were members of Power Rules. Although Ayala claims that this ruined his defense of being an independent businessman who happened to do business with Guzman, there was ample evidence that Ayala had been a member of Power Rules, and therefore the redaction of his statement caused him no prejudice. Finally, the omitted portions of the statement, in which Ayala described participating in different shootings, would probably have been damaging to Ayala, and it was perfectly within counsel's choice of trial strategy not to urge that these portions be admitted. Therefore we find this claim to be without merit.

■ **B. The Alberto Garcia Murder.** Guzman claims that the murder of Alberto Garcia was unrelated to the RICO enterprise, and that evidence of the murder admitted at trial caused prejudicial spillover. The evidence showed that on June 20, 1991, Guzman murdered Garcia by shooting him in the back of the head at point blank range in front of half a dozen witnesses in a park on Union Avenue. Garcia had come to the park with a Power Rules member, Chuleta. In the park, they met up with several other Power Rules members. Chuleta offered one of them, Luis Hoyos, $5,000 to kill the unsuspecting Garcia. Hoyos accepted the contract but did not carry it out right away. A few hours later, Guzman joined the group in the park and took over the contract. Chuleta and Hoyos then took Garcia's gun from him, and Guzman shot and killed Garcia. Guzman and Hoyos ran out of the park, Guzman trying unsuccessfully to give the murder weapon to Hoyos. They went to the apartment of Mamito, another Power Rules member, who provided them with clean clothes.

Guzman did not object to the inclusion of this murder either before or during trial. In a post-trial motion, he raised for the first time the claim that he committed the murder in his individual capacity, and not as part of Power Rules. The district court found that the murder was related to the enterprise since one of the enterprise's purposes was to preserve and enhance its financial resources by accepting murder contracts, and that since it was committed in front of other Power Rules members, the murder helped Guzman increase "a reputation that enabled him to intimidate others ." The district court also found no prejudicial spillover. Because Guzman did not raise these objections at trial, the district court's determination is reviewed for plain error. *See* Fed.R.Crim.P. 52(b); *United States v. Gabriel,* 125 F.3d 89, 96 (2d Cir.1997).

■ To qualify as a predicate activity under RICO, acts must be related both to each other and to the enterprise. *See United States v. Minicone,* 960 F.2d 1099, 1106 (2d Cir.1992). Guzman argues primarily that the government failed to prove a nexus between the murder and Power Rules. But this requirement "is satisfied if the offense was related to the enterprise's activities ... or if the defendant was enabled to commit the offense solely by virtue of his position in the enterprise." *United States v. Thai,* 29 F.3d 785, 815 (2d Cir.1994). We find that it was fairly established that Guzman's position as leader of Power Rules facilitated the murder through Chuleta and Hoyos taking Garcia's gun, and Mamito helping them clean up afterwards. While it may not be that Guzman carried out the murder "solely" by virtue of his position, the jury was entitled to conclude that its commission was for the financial benefit of Power Rules members, initially Hoyos, and later Guzman when he took over the contract,

and that it was committed at the request of Chuleta, a Power Rules associate. In addition, the murder was committed in a highly public manner that tended to enhance Guzman's and Power Rules' reputation as a fearsome group. On plain error review, we cannot say that the evidence was insufficient to establish relatedness to the enterprise, and that the district court erred in so finding. Moreover, Guzman's prejudicial spillover argument has no merit, considering the ample evidence of three other shootings in which Guzman was the triggerman, and three other murders that he ordered. As the jury acquitted Guzman of a separate murder conspiracy, it seems clear that evidence of this particular murder caused no prejudicial spillover.

■ C. Assertion of Witness' Fifth Amendment Rights. Guzman and Rivera claim that they were denied their confrontation rights by Italiano Andino's assertion of his privilege against self-incrimination in response to certain questions on cross-examination. The evidence showed that Guzman had gone to find Andino with several of his crew, including Rivera, for the purpose of shooting Andino in the leg. As planned, they cornered Andino in the hallway of a building, Rivera covered Andino's eyes, and Guzman shot him in the leg. Andino was called as a government witness to testify to the assault. Before he took the stand, the district court allowed an extensive voir dire, out of the presence of the jury, to determine whether his testimony should be allowed despite his limited assertion of his Fifth Amendment privilege. Andino asserted the privilege with regard to questions about whether he possessed guns, whether he associated with members of Power Rules, whether he sold drugs in that building, and whether he used drugs or owed anybody money for drugs. Determining that Andino's testimony was being offered solely to describe

the assault, and that the issues on which Andino would decline to answer were collateral to his direct testimony, the district court ruled that Andino would be permitted to testify. *See United States v. Brooks,* 82 F.3d 50, 55 (2d Cir.1996) (question about other drug transactions was collateral where witness testified fully about transactions at issue). Guzman and Rivera claim that Andino's assertion of the privilege deprived them of an opportunity to cross-examine him on key issues, in particular the motive for the assault. On review of the record, we find that notwithstanding his assertion of privilege regarding his own criminal activities, Andino answered all questions relating to his direct testimony and did not deprive the defense of its right to test this testimony. In addition, during the voir dire, Andino twice answered questions about why he thought he had been assaulted, saying that he believed that it was because he had stolen drugs from Guzman. Defense counsel declined to ask these questions again before the jury. Therefore we find the argument that the defense was deprived of helpful testimony through Andino's limited assertion of the privilege to be without merit.

### D. Additional Claims Relating to the Assault on Andino.

■ Rivera claims first that the proof of the assault on Andino was insufficient to satisfy the requirement of 18 U.S.C. § 1959 that he conspired to assault Andino and aided and abetted the assault "for the purpose of . . . maintaining or increasing [his] position in" Power Rules. There is no requirement that maintaining or increasing position in a racketeering enterprise be the sole motive for undertaking a violent crime; instead, this court has found the motive requirement satisfied "if the jury could properly infer that the defendant committed his violent crime because he knew it was expected of him by reason

of his membership in the enterprise or that he committed it in furtherance of that membership." *United States v. Concepcion,* 983 F.2d 369, 381 (2d Cir.1992). Rivera complains that because Andino was not cross-examined concerning the motive for the attack, there was insufficient proof that it was gang-related and therefore his conviction should be reversed. We disagree. There was ample evidence that Rivera was a member of Power Rules, as well as Guzman's "right-hand man" and "bodyguard." In his post-arrest statement, Rivera told detectives that Guzman had ordered him to cover Andino's eyes while Guzman shot him. Considering the evidence in the light most favorable to the government, *see, e.g., United States v. Pipola,* 83 F.3d 556, 564 (2d Cir.1996), we are satisfied that a reasonable jury could infer that Rivera participated in the assault "because it was expected of him by reason of his membership" in Power Rules.

■ Rivera also argues that there was insufficient evidence to support his conviction under 18 U.S.C. § 924(c) either for carrying a firearm, or for aiding and abetting Guzman's use and carrying of a firearm. We cannot find any merit to this argument either. Andino testified that after Guzman shot him and Rivera let go of him, Guzman said, "Let's be out," and all of the assailants, including Rivera, drew their guns and ran away. This testimony was sufficient to establish that Rivera was carrying a gun, and a jury could properly conclude that he was armed because he was going to participate in a violent assault and brought a gun for protection. In terms of the aiding and abetting issue, Rivera was properly convicted so long as it was proven that he "performed some act that directly facilitated or encouraged the use or carrying of a firearm." *United States v. Medina,* 32 F.3d 40, 45 (2d Cir. 1994). It seems clear that Rivera's con-

duct at the scene, in accompanying Guzman and covering Andino's eyes while Guzman shot him, "facilitated or promoted" Guzman's use of a gun. *Id.* at 46. We therefore reject these claims.

■ E. Insufficiency of the Evidence. Rivera claims first that the only evidence against him in the attempted murder of Teddy Melendez was an uncorroborated confession that he made to a cooperator, Rolando Lorenzo, after the incident. Lorenzo testified that on March 26, 1996, Guzman, Rivera, Lorenzo, and others drove to Ayala's block in order to shoot him. Seeing instead a relative of Ayala's, Rivera and Guzman got out of the car and walked towards him. Lorenzo then heard shots but did not see the shooting. Louis Soto, another cooperating witness, was at the scene and described Lorenzo's car pass by, then Rivera and Guzman on foot, and Juan Padilla and Melendez, who were members of the Avenue St. John Boys, standing in front of a building. Soto testified that Guzman shot at both Padilla and Melendez, and Rivera shot at Padilla. Lorenzo testified that Rivera later told him he had shot at "the guys." This was not an uncorroborated confession because it was corroborated in substantial part by the testimony of Soto, who had seen both Guzman and Rivera shooting in the direction of Padilla and Melendez, by the fact that five shell casings were found at the scene that came from Rivera's gun, and by the fact that Padilla and Melendez were standing together when the shooting occurred. Given the high burden of a defendant to demonstrate insufficiency, this claim must fail.

■ Rivera also claims the evidence is insufficient to support his conviction of conspiracy to murder Viejo, the heroin supplier. Rivera complains that he was convicted solely on the testimony of David Rivera, a cooperating witness whose credibility was attacked by the defense. There is no merit to this claim. First, a conviction may be sustained based on the testimony of a single accomplice "so long as that testimony is not incredible on its face and is capable of establishing guilt beyond a reasonable doubt." *United States v. Diaz,* 176 F.3d 52, 92 (2d Cir.), *cert. denied,* 528 U.S. 875, 120 S.Ct. 181, 145 L.Ed.2d 153 (1999). David Rivera testified that Rivera told him and another accomplice "Now you got to kill" Viejo, that Rivera gave them guns and kept one himself, and that he followed them to the restaurant where Viejo was to be found, "like making sure [they] got the job done." We find nothing incredible about that testimony on its face. Additionally, Soto testified that Guzman said he was going to send Rivera and others to kill Viejo at the restaurant, and additional witnesses corroborated the fact that there was a shooting at the restaurant.

■ Ayala, too, makes an insufficiency claim, arguing that it was not proven that he participated in separate conspiracies to distribute crack and heroin, and thus his RICO conviction must be vacated since two predicate acts were not shown. Whether the government's proof establishes a single conspiracy or several independent ones "is a question of fact for a properly instructed jury." *United States v. Johansen,* 56 F.3d 347, 350 (2d Cir. 1995). Here, the jury was instructed on multiple conspiracies, and Ayala does not challenge the jury instructions on these counts. In addition, in *United States v. Korfant,* 771 F.2d 660 (2d Cir.1985), we identified eight factors that are relevant to determining whether separately charged conspiracies are the same crime for double jeopardy purposes. These include the criminal offenses charged, overlap of participants, overlap of time, similarity of operation, common overt acts, geographic

scope, common objectives, and degree of interdependence. *See id.* at 662. The evidence at trial showed that the crack conspiracy lasted from 1988 to 1996, while the heroin conspiracy existed only from 1995 to 1996; that crack was supplied by a variety of wholesalers, while heroin was supplied exclusively by Viejo; that the heroin business was considerably more lucrative than the crack business; that certain spots sold exclusively crack and others heroin, though some sold both; and that different workers distributed different drugs. We find that these distinctions sufficiently establish the existence of two separate conspiracies, and that the jury was entitled to so find.

 Ayala also claims that the evidence was too weak to establish his membership in Power Rules, because the evidence given by Soto was insufficiently corroborated. Even assuming that were true, however, "[a]ny lack of corroboration ... goes merely to the weight of the evidence, not to its sufficiency, and a challenge to the weight is a matter for argument to the jury, not a ground for reversal on appeal." *Diaz,* 176 F.3d at 92 (internal quotation marks omitted). Ayala's claim that his RICO conviction is undermined because he only participated in Power Rules for a short time is baseless. Therefore we reject these arguments.

 F. Double Jeopardy. Rivera argues that his convictions on separate counts under 18 U.S.C. § 1959 for the conspiracy to murder Ayala and the conspiracy to murder other Avenue St. John Boys, specifically the incident involving Padilla and Melendez, violate double jeopardy. Rivera claims that the conspiracies were the same as they both involved the same objective of murder, that the day of the shooting of Padilla and Melendez occurred within the time frame of the conspiracy to murder Ayala, and

that a conspiracy to murder Ayala was wholly contained within a conspiracy to murder members of the Avenue St. John Boys, since Ayala was its key member.

Rivera did not challenge the indictment as multiplicitous before trial, nor did he object to the court's jury instructions on multiple conspiracies or to the special verdict form. He only challenged his section 924(c) convictions in a post-trial motion, arguing that the conspiracy to murder Ayala encompassed various other conspiracies, including those relating to the shooting of Padilla and Melendez, the attempted murder of Viejo, and the assault on Andino. The district court denied the motion, stating that the convictions were "supported by independent evidence of four predicate crimes" and therefore that "the indictment [was] not multiplicitous." We agree.

While Rivera argues that four of the eight *Korfant* factors favor him, including offenses charged, overlap of time and location, and similarity of operation, this court has held that "[a]t a certain level of generality," the fact that two conspiracies "overlap with respect to a number of characteristics, including time frame, geographic locale, participants, and criminal objective" does not negate the existence of two conspiracies if "[t]here exist sufficient distinctions between the schemes charged." *United States v. Macchia,* 35 F.3d 662, 668 (2d Cir.1994). Here, the overt acts related to the conspiracy to murder Ayala included Rivera's participation in numerous conversations about killing Ayala over a period of time, his armed participation in an incident in which Guzman hired a car service to take Rivera and others to Ayala's block in order to kill him but were unable to find him, and an incident in which Rivera fired a gun from a car on Beck Street. In contrast, the overt acts relating to the

conspiracy to murder other Avenue St. John Boys related solely to the events of March 26, 1996, when Guzman and Rivera shot at Padilla and Melendez. In addition, the conspiracies had different objectives, in that they contemplated different victims, were not interdependent as the success or failure of one conspiracy would not have a corresponding effect on the other, *see Macchia*, 35 F.3d at 671, and involved different supporting participants. While the evidence could conceivably have supported a jury finding that the conspiracy to murder Ayala was an overarching conspiracy that subsumed all other acts of violence against the Avenue St. John Boys, the jury found otherwise, and its verdict was properly supported by the evidence.

Rivera also argues that one of his convictions under section 924(c) should be vacated because the jury may have convicted him of Count 35, which charged him with using or carrying a gun in relation to the conspiracy to murder Ayala, and Count 39, which charged him with using or carrying a gun in relation to the conspiracy to murder members of the Avenue St. John Boys, based on the same conduct, that is, his use of a gun during the shooting incident involving Padilla and Melendez. It is true that where a conviction might rest on an impermissible basis, it must be vacated despite the availability in the evidence of a valid basis for conviction. *See Stromberg v. California*, 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117 (1931). But if Rivera thought that the evidence of his using or carrying a firearm on occasions other than during the shooting of Padilla was too insubstantial to support a jury verdict, he was obliged to seek appropriate relief before the case went to the jury, not merely raise this argument in a post-trial motion. *See United States v. Malpeso*, 115 F.3d 155, 170 (2d Cir.1997),

*cert. denied*, 524 U.S. 951, 118 S.Ct. 2366, 141 L.Ed.2d 735 (1998); *see also United States v. Washington*, 861 F.2d 350, 352 (2d Cir.1988) ("The *Stromberg* principle does not aid the appellants ... because they failed to request a jury instruction that would have limited the jury's consideration.... [W]here an impermissible basis of conviction arises from an insufficiency of evidence and a valid basis remains on an alternative theory, a defendant must request the trial judge not to submit the invalid basis to the jury or else the objection will be deemed waived.").

Because we conclude that the jury was entitled to find that these were two separate conspiracies, neither of Rivera's firearms convictions need be reversed. *Cf. United States v. Lindsay*, 985 F.2d 666, 674 (2d Cir.1993) ("Only where the defendant commits multiple [underlying] crimes, and the government can link the firearms to those crimes, may the government prosecute for multiple violations of § 924(c)(1).") (citations omitted). In any event, the evidence overwhelmingly established that Rivera carried guns on several occasions other than during the Padilla shooting. Rivera does not dispute the proof that he shot at Padilla on March 26, 1996. In addition, we find sufficient evidence that Rivera carried a gun during the incident involving the car service, as well as during the shooting on Beck Street, for the jury to have based its conviction on Count 35 on conduct other than that of March 26. *Cf. Malpeso*, 115 F.3d at 170 (rejecting defendant's argument relating to two section 924(c) convictions where the evidence "overwhelmingly established that [defendant] carried guns on several occasions throughout the conspiracy charged"). Therefore, we do not find that this argument warrants reversal.

We have considered all of defendants' remaining arguments and find them to be without merit.

The judgment of the district court is hereby AFFIRMED.