**Miguel A. GUZMAN, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**No. 02 Civ. 8459(SAS).**

United States District Court, S.D. New York.

June 16, 2003.

---

Ruth M. Liebesman, New York, New York, for Petitioner.

Robin L. Baker, Assistant United States Attorney, New York, New York, for Respondent.

### OPINION AND ORDER

SCHEINDLIN, District Judge.

Miguel A. Guzman was the leader of a gang known as "Power Rules" which distributed heroin, cocaine and crack cocaine in the Bronx. In June of 1998, following a three-month jury trial, Guzman was found guilty of racketeering, murder, narcotics conspiracy, firearms and other charges. Guzman was sentenced to six concurrent terms of life imprisonment on the racketeering count (Count 1), the racketeering conspiracy count (Count 2), the murder-in-aid-of-racketeering count (Count 4), and the three drug conspiracy counts (Counts 29, 30 and 31), plus 145 consecutive years of imprisonment on the firearms charges. Guzman now brings this petition pursuant to section 2255 of Title 28 of the United States Code seeking to vacate his life sentences and have this Court re-sentence him on those six counts.

In his petition, Guzman claims both underlying constitutional violations and ineffective assistance of counsel in connection with those violations. Specifically, Guzman asserts that: (1) his sentencing counsel was ineffective for failing to object to this Court's reliance on an allegedly incorrect section of the United States Guidelines in imposing life sentences on the racketeering and racketeering conspiracy charges; (2) his rights under the *Ex Post Facto* clause were violated by this Court's imposition of a statutorily-mandated life sentence on the murder-in-aid-of-racketeering charge, his sentencing counsel was ineffective in allowing such a sentence to be imposed, and his appellate counsel was ineffective for failing to raise the issue on appeal; and (3) his rights under the Due Process Clause were violated in light of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and his appellate counsel was ineffective for failing to raise that issue on appeal. For the following reasons, Guzman's petition is denied in part and granted in part.

## I. BACKGROUND

Indictment S8 97 CR 786(SAS) was filed on March 2, 1998, in fifty-two counts,[1] charging Guzman and twelve co-defendants with various crimes arising from their involvement with a racketeering enterprise known as "Power Rules." Count One charged Guzman with racketeering in violation of 18 U.S.C. § 1962(c) ("RICO"). With respect to Count One, Guzman was charged with participating in twenty predicate racketeering acts. Count Two charged Guzman with conspiracy to violate the racketeering laws in violation of 18 U.S.C. § 1962(d) ("RICO Conspiracy"). Counts Three through Twenty–Three charged Guzman with conspiracy to murder, murder, attempted murder in aid of racketeering in violation of 18 U.S.C. §§ 1959(a)(1) and (5). Count Four charged Guzman with the murder of Neil Cintron in violation of . 18 U.S.C. §§ 1959(a)(1) and (2). Count Twenty–Nine charged Guzman with a conspiracy to distribute more than one kilogram of heroin in violation of 21 U.S.C. § 846. Counts Thirty and Thirty–One charged Guzman with conspiracy to distribute more than five kilograms of powder cocaine and more than fifty grams of crack cocaine, respectively, also in violation of 21 U.S.C. § 846. The jury did not, however, determine any drug quantities with regard to these offenses.

Trial commenced on March 19, 1998, and ended on June 12, 1998, when the jury found Guzman guilty of a majority of the charges. At sentencing, Guzman was represented by Jeremy Gutman, who replaced Labe M. Richman, Guzman's trial attorney. On May 11, 1999, this Court sentenced Guzman to life imprisonment plus 145 consecutive years, lifetime supervised release and a mandatory $2,050 special assessment. Specifically, Guzman was sentenced to life imprisonment on Counts One and Two, Count Four and Counts Twenty–Nine through Thirty–One; twenty years imprisonment on Counts Six, Seven, Thirteen, Seventeen, Eighteen, Twenty–One, and Twenty–Five through Twenty–Seven; ten years imprisonment on Counts Three, Five, Ten, Twelve, Sixteen and Twenty; and three years imprisonment on Count Twenty–Four. All of these terms were imposed to run concurrently. To run consecutively were the 145 years imposed on the section 924(c) convictions.[2]

---

1. Guzman was charged in forty-six counts.

2. Counts Thirty–Two, Thirty–Three, Thirty–Five, Thirty–Seven, Thirty–Nine, Forty–Two, Forty–Five and Forty–Six.

Guzman appealed his convictions to the Second Circuit where he was represented by a third attorney, Theodore S. Green. On appeal, Guzman argued that: (1) this Court erred in discharging one of the jurors for cause; (2) post-arrest statements of two of his co-defendants were improperly redacted and admitted; (3) the murder of Alberto Garcia was not related to the enterprise; (4) he was denied his confrontation rights when a witness asserted his Fifth Amendment privilege against self-incrimination in response to certain questions elicited upon cross-examination; and (5) this Court abused its discretion in rejecting his pro se post-trial motion. On March 23, 2001, the Second Circuit rejected these arguments and affirmed Guzman's convictions in an unpublished decision. *See United States v. Guzman,* No. 99–1262(L), 7 Fed.Appx. 45, 2001 WL 290508 (2d Cir. Mar.23, 2001). Guzman filed a pro se petition for a writ of certiorari which was denied by the United States Supreme Court on October 1, 2001. *See Guzman v. United States,* 534 U.S. 867, 122 S.Ct. 154, 151 L.Ed.2d 104 (2001).

## II.  LEGAL STANDARDS

### A.  Standard for Habeas Relief

■ Section 2255 allows a convicted person being held in federal custody to petition the sentencing court to vacate, set aside or correct a sentence. A properly filed motion under Section 2255 must allege that: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the sentencing court was without jurisdiction to impose such sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255. Accordingly, collateral relief under Section 2255 is available "only for a constitutional error, a lack of jurisdiction in the sentencing court,

or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Bokun,* 73 F.3d 8, 12 (2d Cir.1995) (quoting *Hill v. United States,* 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962)); *accord United States v. DeLuca,* 889 F.2d 503, 506 (3d Cir.1989).

### B.  Right to Effective Assistance of Counsel

The Sixth Amendment guarantees a fair trial and competent counsel in all criminal prosecutions. *See* U.S. Const. Amend. VI. The Sixth Amendment "stands as a constant admonition that if the constitutional safeguards it provides be lost, justice will not still be done." *Gideon v. Wainwright,* 372 U.S. 335, 343, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

To prove that counsel was constitutionally ineffective, a petitioner must satisfy the two-part test established in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A petitioner must first show that his counsel's representation fell below "an objective standard of reasonableness" under "prevailing professional norms." *See id.* at 688, 104 S.Ct. 2052. The second prong requires a petitioner to "affirmatively prove prejudice," *i.e.,* to demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *See id.* Judicial scrutiny of an attorney's performance is highly deferential as there is a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689, 104 S.Ct. 2052.

## III. DISCUSSION

### A. The Use of the First Degree Murder Guideline to Calculate the Base Offense Level on the Racketeering Counts Was Appropriate

■ In convicting Guzman of RICO and RICO conspiracy (Counts One and Two), the jury found that he committed, or aided and abetted the commission of, four murders "in violation of New York State law." Indictment ¶¶ 7(b), 8(b), 9(d), 10(b). In calculating Guzman's base offense level, this Court applied United States Sentencing Guideline ("U.S.S.G.") § 2A1.1, entitled "First Degree Murder." *See* PSR ¶¶ 125, 139, 146, 153. No party objected. Under New York State law, these murders were denominated as "Murder in the Second Degree." *See* New York Penal Law § 125.25.[3] Guzman now argues that his sentencing counsel was ineffective for not asking the Court to apply U.S.S.G. § 2A1.2, entitled "Second Degree Murder," which would have resulted in a lower base offense level.

Guzman is correct that New York law would categorize the four murders as "Murder in the Second Degree." But Guzman ignores the fact that the same conduct that constitutes second-degree murder under New York law also constitutes first-degree murder under federal law. Under the Guidelines for racketeering offenses, "[i]f the underlying conduct violates state law, the offense level corresponding to the most analogous federal offense is to be used." U.S.S.G. § 2E1.1, Application Note 2. Under federal law, any "willful, deliberate, malicious and premeditated

killing ... is murder in the first degree." 18 U.S.C. § 1111(a). Thus, first-degree murder in violation of section 1111 is the federal offense most analogous to the murders for which Guzman was convicted and U.S.S.G. § 2A1.1 was the correct Guideline for determining Guzman's base offense level on Counts One and Two. *See United States v. Minicone,* 960 F.2d 1099, 1110 (2d Cir.1992) ("Although New York law would have categorized the murder of Marrone only as second degree murder, the task of the district court was to find the offense level corresponding to the most analogous federal offense.... We hold that the district court did not err in concluding that the most analogous federal offense was first degree murder under § 1111."). Accordingly, sentencing counsel was not ineffective for having failed to object to the application of an appropriate Guideline.[4] *See Aparicio v. Artuz,* 269 F.3d 78, 99 (2d Cir.2001) ("The failure to include a meritless argument does not fall outside the wide range of professionally competent assistance to which [a][p]etitioner [is] entitled.") (internal quotation marks and citation omitted).

### B. There Is No *Ex Post Facto* Problem with Respect to the Life Sentence Imposed on the Murder–In–Aid–Of–Racketeering Count

■ Count Four charged Guzman with murdering Neil Cintron on June 4, 1994, for the purpose of maintaining and increasing his position within Power Rules, a RICO enterprise. *See* 18 U.S.C. §§ 1959(a)(1) and (2). Guzman argues

---

**3.** "A person is guilty of murder in the second degree when: With intent to cause the death of another person, he causes the death of such person or of a third person; ..." New York Penal Law § 125.25(1)(a). New York State law reserves first degree murder for intentional killing under special circumstances, *e.g.,*

where the victim is a police officer, a peace officer, or a corrections officer. *See* New York Penal Law § 125.27.

**4.** Nor was appellate counsel ineffective for not having discovered and raised this meritless issue on appeal.

that his rights under the *Ex Post Facto* Clause were violated because this Court sentenced him to a mandatory life sentence on that Count pursuant to a version of 18 U.S.C. § 1959 that became effective after the date of the murder. At the time of the murder, section 1959 provided, in pertinent part:

> a) Whoever, as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value from an enterprise engaged in racketeering activity, or for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity, murders, kidnaps, maims, assaults with a dangerous weapon, commits assault resulting in serious bodily injury upon, or threatens to commit a crime of violence against any individual in violation of the laws of any State or the United States, or attempts or conspires so to do, shall be punished -
>
> > (1) for murder or kidnaping, *by imprisonment for any term of years or for life* ...

18 U.S.C. § 1959(a) (1994) (emphasis added). The above statute was amended on September 13, 1994, and now makes the punishment for murder death or mandatory life imprisonment. Guzman argues that if the former version of section 1959 was used at his sentencing, this Court would have been compelled to determine whether the sentence should be for a term of years or for life, rather than automatically imposing a life sentence.

At the sentencing, this Court applied the Guidelines analysis contained in the Presentence Report ("PSR"), stating:

> The guideline for violating the racketeering statute is found in Section 2E1.1. That section provides that the base offense level is the greater of either 19 or that which is applicable to the underlying racketeering activity. The murder guideline is found in Section 2A1.1(a) and results in a base offense level of 43. Thus the base offense level for each conviction for murder as a racketeering act is 43. Because Mr. Guzman was the organizer or leader of a criminal activity that involved five or more participants ... a four-level enhancement to 47, pursuant to Section 3B1.1(a), is warranted.... The base offense level, therefore, goes from 43 to 47. This calculation applies to Groups B, D, E and F, which cover the murders of Alvin Rivera, Alberto Garcia, also known as Cholo, Jose Ramon Balbi and Neil Cintron.

May 11, 1999 Sentencing Transcript ("Sent.Tr.") at 5–6. The November 1, 1997 edition of the Guidelines Manual was applied in this sentencing. *See* PSR § 114. Prior to November 1, 1997, section 2A1.1 was last amended on November 1, 1993. Thus, the Guidelines in effect at both the time of the Cintron murder and at the time of sentencing called for a base offense level of 43 which has always mandated a sentence of life imprisonment. Furthermore, the governing statute, 18 U.S.C. § 1959, included life imprisonment as a sentencing option at all relevant times—before September 13, 1994, a life sentence or a term of years was permitted while after September 13, 1994, life imprisonment or death became mandatory.

■■■ The *Ex Post Facto* Clause applies to "[e]very law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime when committed." *Calder v. Bull,* 3 Dall. 386, 389, 1 L.Ed. 648 (1798). Thus, while a sentencing court must generally use the Guidelines in effect at the time of sentencing, *see* 18 U.S.C. § 3553(a)(4), "when the Guidelines in effect at the time of sentencing provide for a higher range than those

in effect at the time the crime was committed, an *ex post facto* problem exists and the court must not impose a sentence in excess of that allowed by the older Guidelines." *United States v. Nagi,* 947 F.2d 211, 213 n. 1 (6th Cir.1991). Underlying the *ex post facto* prohibition is a concern for "the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated." *Weaver v. Graham,* 450 U.S. 24, 30, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981).

Here, the rationale and purpose of the *Ex Post Facto* Clause are clearly not applicable to the Guzman sentence. Under both versions of section 1959, a sentence of life imprisonment was an available option. Guzman was therefore on notice both before and after the murder of Neil Cintron that he could receive a life sentence for that crime. *See United States v. Lykes,* 999 F.2d 1144, 1150 (7th Cir.1993) ("The Commission's decisions to alter the crimes which may give rise to sentencing as a career offender and to allow that change to serve as grounds for a reduction in the sentences imposed on defendants sentenced under an earlier version of the Guidelines do not change the fact that is central to the *ex post facto* issue in this case—the defendant was on notice that his conduct could result in the sentence he received."). Furthermore, the Guidelines did not increase the punishment for unlawful conduct relating to RICO organizations during the relevant period. Section 2A1.1 has consistently mandated a base offense level of 43 which has consistently dictated a sentence of life imprisonment according to the Sentencing Table. Because the punishment was no greater under the later version of section 1959 and because life imprisonment was an available option under both versions of the statute, there is no *ex post facto* problem in imposing life imprisonment for Count Four. *See United States v. Holmes,* 975 F.2d 275, 280 (6th Cir.1992) ("Because application of the guidelines in effect at the time of sentencing leads to no harsher a sentence than would result from the application of the guidelines at the time of the offense, the magistrate's use of the post-November 1998 version of section 2K2.3 was appropriate and created no *ex post facto* problem."). And because there is no *ex post facto* problem, neither his attorney at sentencing nor his appellate counsel were ineffective for having failed to raise this issue. *See Aparicio,* 269 F.3d at 99.

## C. The *Apprendi* Issues

### 1. *Apprendi* Does Not Apply Retroactively on Collateral Review

■ Guzman was sentenced to life imprisonment on all three of the narcotics conspiracy charges. However, in accordance with established law at the time, the jury was not asked to and did not make any findings as to the quantities of drugs involved in these offenses. *See* Trial Transcript at 9137–38 ("[The] actual quantity of narcotics involved is not an element of this crime, so you need not be concerned with that."). Guzman did not object to this instruction at the charging conference, *see id.* at 8168–72, or after it was given, *see id.* at 9206–16.

At sentencing, this Court adopted the conclusion of the Probation Office, *see* PSR ¶ 210, stating that "[t]he evidence reveals that Mr. Guzman [was] responsible for the distribution of no less than ten kilograms of heroin, one kilogram of cocaine, and 20 kilograms of crack." Sent. Tr. at 7. Guzman argues that the imposition of life sentences violated his due process rights in light of *Apprendi* where the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the pre-

scribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490, 120 S.Ct. 2348. This due process claim fails, however, as the Second Circuit has recently held that "*Apprendi* does not apply retroactively to initial section 2255 motions for habeas relief." *Coleman v. United States,* 329 F.3d 77, 78–79, 90 (2d Cir. 2003).

### 2. Appellate Counsel Was Ineffective for Not Raising the *Apprendi* Issue on Appeal

▮ On June 26, 2000, after Guzman's brief on appeal was filed, the Supreme Court decided *Apprendi.* Because *Apprendi* was decided while Guzman's direct appeal was pending, its holding would have applied retroactively in that appeal. *See United States v. Joyner,* 313 F.3d 40, 45 (2d Cir.2002) ("Because 'a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final . . . ,' we are obligated to apply *Apprendi* to this case.") (quoting *Griffith v. Kentucky,* 479 U.S. 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987)). Guzman's appellate counsel could have moved to file a supplemental brief given this new case law. Instead, the issue was ignored and Guzman's appeal was denied approximately nine months later, on March 23, 2001.

▮ Under the plain error test of Federal Rule of Criminal Procedure 52(b), "before an appellate court can correct an error not raised at trial, there must be (1) 'error,' (2) that is 'plain,' and (3) that 'affect[s] substantial rights.'" *Johnson v. United States,* 520 U.S. 461, 466–67, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997) (quoting *United States v. Olano,* 507 U.S. 725,

732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)). "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error 'seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.'" *Johnson,* 520 U.S. at 467, 117 S.Ct. 1544 (quoting *Olano,* 507 U.S. at 732, 113 S.Ct. 1770).

▮ The Government concedes that appellate counsel's failure to raise an *Apprendi* claim on appeal constitutes plain error. The next question is whether the error affected Guzman's substantial rights. "An error affects a defendant's 'substantial rights' if it is 'prejudicial' and it 'affected the outcome of the district court proceedings.'" *United States v. Thomas,* 274 F.3d 655, (2d Cir.2001) (quoting *United States v. Gore,* 154 F.3d 34, 47 (2d Cir. 1998)). Here, the prejudice is clear. Instead of being sentenced to the twenty year maximum on each conspiracy pursuant to 21 U.S.C. § 841(b)(1)(C), Guzman was sentenced to life under section 841(b)(1)(A).[5] Such a disparity in sentencing is indisputably prejudicial. *See Thomas,* 274 F.3d at 669 ("It is beyond cavil that imprisonment for an additional 52 months beyond the penalty authorized by Congress, as a direct result of the error of using a drug quantity neither charged nor found by the jury, constitutes prejudice."). The error also clearly affected the outcome of district court proceedings as a jury would have been required to determine drug quantities in order to permit the Court to rely on the harsher sentencing provisions of section 841(b)(1)(A).

The Government argues, however, that this plain error did not seriously affect the fairness, integrity or public reputation of

---

5. For cases involving one or more kilograms of heroin, five or more kilograms of cocaine, or fifty or more grams of crack cocaine, the penalty is a term of imprisonment which may not be less than ten years or more than life imprisonment. *See* 21 U.S.C. § 841(b)(1)(A).

**264**

judicial proceedings "because there was overwhelming and essentially uncontroverted evidence at Guzman's trial that he conspired to distribute and possess with intent to distribute quantities of heroin, cocaine, and crack far in excess of the quantities that trigger a maximum sentence of life imprisonment." Government's Memorandum of Law in Opposition to Guzman's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2255 at 31–32 (citing *United States v. Cotton*, 535 U.S. 625, 632, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002) as a case where the fourth prong was not met given the "overwhelming" and "essentially uncontroverted" evidence of drug quantity). The Government then goes on to summarize the trial evidence regarding drug quantities. This effort is in vain. It is for the Court of Appeals, not the district court, to determine whether a plain error seriously affected the fairness of judicial proceedings such that it must be corrected on appeal. By failing to raise the *Apprendi* issue on Guzman's direct appeal, his counsel deprived the Court of Appeals of this opportunity which, in turn, deprived his client of meaningful appellate review. An error of this magnitude clearly satisfies the two-part test of *Strickland*. Accordingly, Guzman received ineffective assistance from his appellate counsel.

■ The question then arises as to what the appropriate relief should be. Given the life sentences imposed on Counts One, Two and Four, which have now survived collateral attack, plus the 145 consecutive years, it would exalt form over substance to re-sentence Guzman to what could conceivably be three consecutive twenty-year sentences on the drug charges.[6] *Cf. United States v. Gordon*, 291

F.3d 181, 194 (2d Cir.2002), *cert. denied*, 537 U.S. 1114, 123 S.Ct. 866, 154 L.Ed.2d 788 (2003) ("Circuits have chosen not to exercise their discretion to correct plain sentencing errors raised by the government on appeal ... when the length of the sentence imposed and the correct sentence was not significant enough to create a miscarriage of justice.") (internal quotation marks and citation omitted). *See also United States v. Brown*, 316 F.3d 1151, 1161 (10th Cir.2003) (citing cases).

## III. CONCLUSION

■ For the reasons stated above, the petition is denied in part and granted in part. However, because it would be futile to re-sentence petitioner on the drug conspiracy charges, the Court declines to do so. However, a certificate of appealability is granted as to the issue of the required relief, *i.e.*, whether the district court must re-sentence a defendant who is otherwise serving three concurrent life sentences where it has been determined that the defendant received ineffective assistance of counsel with regard to life sentences imposed on three separate offenses. This Court will not issue a certificate of appealability as to the other issues addressed herein as defendant has not made a substantial showing that he was denied a constitutional right. *See* 28 U.S.C. § 2253(c)(2). *See also Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 112 (2d Cir.2000) (holding that substantial showing exists where (i) the issues involved in the case are debatable among jurists of reason, (ii) a court could resolve the issues in a different manner, or (iii) the questions are adequate to deserve encour-

---

**6.** Of course, if a higher court overturns the life sentences on the murder convictions, a re-sentencing would be required in any event.

At that time, the Court would also re-sentence Guzman on the drug conspiracy convictions.

agement to proceed further). The Clerk of the Court is directed to close this case.