**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0458n.06
Filed: August 1, 2008

**No. 04-4481**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| GLEN D. CARLISLE, | ) | NORTHERN DISTRICT OF OHIO |
| | ) | |
| Defendant-Appellant. | ) | |

**Before: DAUGHTREY, GILMAN, and ROGERS, Circuit Judges.**

**ROGERS, Circuit Judge.** This case is part of a consolidated appeal involving thirteen defendants who were members of the Outlaw Motorcycle Club ("OMC"), an international motorcycle club with chapters across the country and around the world. In 1997, the Federal Bureau of Investigation and state law enforcement agencies began an investigation into the Green region of the OMC, which consists of chapters in Dayton, Ohio; Fort Wayne, Indiana; Louisville, Kentucky; Indianapolis, Indiana; and Oklahoma City, Oklahoma. As a result of the investigation, a grand jury in the Northern District of Ohio returned a 40-count indictment in 2003 charging the defendants with various federal offenses, including Racketeer Influenced and Corrupt Organizations Act ("RICO"), drug trafficking, and firearms offenses. The defendants were tried together before an anonymous jury.

Defendant Glen D. Carlisle was a member of the Dayton chapter of the OMC. Following trial, Carlisle was convicted of one count of substantive RICO, in violation of 18 U.S.C. § 1962(c), one count of RICO conspiracy, in violation of 18 U.S.C. § 1962(d), one count of conspiracy to possess with intent to distribute narcotics, in violation of 21 U.S.C. § 846, one count of transportation of stolen vehicles, in violation of 18 U.S.C. § 2312, and one count of possession of stolen property, in violation of 18 U.S.C. §§ 2313(a) and 2. On November 4, 2004, Carlisle was sentenced to 148 months' imprisonment on the substantive RICO, RICO conspiracy, and narcotics conspiracy counts, and 10 years on the transportation of stolen vehicles and possession of stolen property counts, to run concurrently.

On appeal, Carlisle contests evidence introduced at trial related to a shooting that occurred at Spanky's Dollhouse in Dayton, Ohio. The government charged this incident as Racketeering Act 25 in the indictment, in support of the substantive RICO count.[1] The relevant facts surrounding the shooting at Spanky's are as follows. On February 24, 2001, Carlisle, several other members of the OMC Dayton chapter, and members of the Avenger Motorcycle Club, went to Spanky's, a strip club in Dayton. Carlisle was armed with a concealed firearm. After a fight broke out between a group of African-American men and OMC members, Carlisle pulled the gun from his waistband and shot

---

[1]Racketeering Act 25 alleged:

On or about February 24, 2001, in Montgomery County, Southern District of Ohio, GLEN D. CARLISLE and ALLEN C. LAWSON, while aiding and abetting each other, did purposely cause the death of Eric Laverne Coulter at Spanky's Dollhouse, 2213 Wagoner Ford Road, Dayton, Ohio, in violation of Ohio Revised Code Section 2903.02.

Eric Coulter, one of the African-American men, in the buttocks area. A member of the Avenger Motorcycle Club shot Coulter a second time, and Coulter died at the scene. The incident was caught on video surveillance tape. Carlisle later pleaded guilty to voluntary manslaughter in state court as a result of the shooting.

Carlisle argues that the incident at Spanky's was not sufficiently connected to the RICO enterprise alleged by the government and charged in the indictment. To prove a "pattern of racketeering activity" under 18 U.S.C. § 1962, the government must establish a relationship between the predicate acts charged and the affairs of the criminal enterprise alleged. *See H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 238-41 (1989); *United States v. Corrado*, 227 F.3d 543, 554 (6th Cir. 2000). Carlisle characterizes the incident at Spanky's as an isolated reaction to provocation and contends that the incident thus cannot support his RICO convictions. In the alternative, Carlisle argues that he was unfairly prejudiced by the admission of the evidence.

Carlisle's arguments are not persuasive. First, evidence adduced at trial was sufficient to establish the requisite connection between the Spanky's incident and the affairs of the RICO enterprise alleged by the government. This circuit has held that the "relationship or relatedness" requirement for RICO predicate acts can be satisfied by proof that: "(1) the defendant was enabled to commit the offense solely by virtue of his position in the enterprise; or (2) the offense was related to the activities of the enterprise." *Corrado*, 227 F.3d at 554 (quoting *United States v. Locascio*, 6 F.3d 924, 943 (2d Cir. 1993)). In this case, it is evident that the incident at Spanky's was related to the activities of the OMC enterprise charged in the indictment. The record is replete with evidence

that members of the OMC enterprise engaged in violent tactics in an effort to intimidate rivals, and for the purpose of furthering its unlawful activities. For example, prior to the admission of the Spanky's incident evidence, Ron Armstrong, a former member of the Indianapolis chapter of the OMC, gave testimony regarding incidents where members of the OMC employed or attempted to employ violent tactics to intimidate rival motorcycle clubs. Jerry Bloor, another OMC member, testified to a drive-by shooting perpetrated by OMC members at the clubhouse of the Iron Horsemen, a rival motorcycle gang. From this, a jury could reasonably infer that the incident at Spanky's was an extension of these violent and intimidating tactics. The record indicates that, before the shooting of Coulter, the words "F*** the Outlaws" were uttered three separate times and that many of the OMC members at Spanky's were wearing club "colors." The public nature of the confrontation and the conspicuous attire worn by the OMC members indicates that the conduct undertaken by Carlisle at Spanky's, whether provoked or not, was designed to enhance the OMC enterprise's reputation as a violent and intimidating organization. Indeed, other courts have recognized a nexus between the affairs of a RICO enterprise and violent conduct that tends to enhance the enterprise's reputation as a "fearsome group." *See United States v. Guzman*, 7 F. App'x 45, 52 (2d Cir. 2001); *see also United States v. Crockett*, 979 F.2d 1204, 1213-14 (7th Cir. 1992).

Second, evidence of the Spanky's incident was not, as Carlisle alleges, unduly prejudicial or cumulative for purposes of Federal Rule of Evidence 403. Accordingly, the district court did not abuse its discretion in admitting the evidence. *See United States v. Wheaton*, 517 F.3d 350, 364 (6th Cir. 2008) (standard of review). The Spanky's incident constituted direct proof of a racketeering

act charged in the indictment. Thus, the evidence was relevant to the criminal conduct charged and,

moreover, was highly probative of that conduct. Because this probative value was not substantially

outweighed by "the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by

considerations of undue delay, waste of time, or needless presentation of cumulative evidence," Fed.

R. Evid. 403, admission of the evidence was proper.

For the foregoing reasons, Carlisle's convictions and sentence are affirmed.